UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAHLIL LYTTLE,

       Plaintiff,             CIVIL ACTION NO. 10-CV-14142

vs.

                                         DISTRICT JUDGE MARK A. GOLDSMITH

REDFORD POLICE OFFICER RILEY,  MAGISTRATE JUDGE MONA K. MAJZOUB
et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION:** This Court recommends that the Motion For Summary Judgment filed by Defendants Redford Township and Kevin Riley (docket no. 11) be **GRANTED IN PART AND DENIED IN PART**.

**II.    REPORT**:

       Plaintiff filed this action against Redford Township, Redford Police Officer Kevin Riley, and unknown Redford Supervising Police Officer pursuant to 42 U.S.C. § 1983 and state law, alleging that he was seriously injured when Defendant Riley tasered him three times during the course of an unlawful arrest. Presently before the Court is the Motion For Summary Judgment filed by Defendants Redford Township and Kevin Riley. (Docket no. 11). The motion is fully briefed. (Docket nos. 15, 17). This matter was referred to the undersigned for determination pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 12). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f). The motion is now ready for ruling.

1

A.      **Factual Background and Claims**

On May 19, 2009 at approximately 12:45 a.m. Redford Township Police Officers were dispatched to the Plaintiff's residence to investigate a 9-1-1 call from Plaintiff's girlfriend, Sarah Thomas related to a domestic issue. Defendants assert the police were summoned to the residence on a domestic disturbance complaint on information that Plaintiff was fighting with Thomas. (Docket no. 11, exs. 1, 3). Thomas claims she placed the 9-1-1 call because she was worried that Plaintiff would leave the residence and she was concerned for his safety. (Docket no. 15, ex. A at 8).

When Redford police officers arrived at the scene Plaintiff was standing with Thomas in the enclosed front porch. (Docket no. 17, ex. B at 33). Plaintiff was not happy to see the police and began yelling profanities at them, including "get off my fucking property, we don't need you," and "get the fuck on." (Docket no. 11, ex. 2 at 20; Docket no. 17, ex. B at 34-35). Thomas also screamed and shouted at the police. (Docket no. 15, ex. A at 16). According to Thomas, both she and Plaintiff had been drinking. (Docket no. 15, ex. A at 8). Plaintiff provided conflicting testimony as to whether he had been drinking, but acknowledged that he was distraught that evening after having attended the funeral and wake of his brother, and claimed that he may have been arguing with Thomas before the police arrived. (Docket no. 11, ex. 2 at 17; Docket no. 17, ex. B at 32-34).

The evidence is in dispute over whether the officers could see inside the enclosed front porch from where they were standing on the sidewalk. Plaintiff maintains that Defendants could not see into the covered porch because the blinds were drawn and the porch door has no window. Defendants maintain they could see inside the enclosure where Plaintiff and Thomas were standing.

(Docket no. 15, ex. A at 25).

According to Defendants' version of the facts, Plaintiff was volatile, he was yelling at Thomas, and he was yelling obscenities including "fuck the police," "fuck the Redford police," "I hate the fucking police," and "I hate the Redford fucking police." (Docket no. 11, ex. 1; Docket no. 15, ex. A at 22-23; Docket no. 17, ex. B at 35). They claim Plaintiff physically prevented Thomas from leaving and pulled her toward the house against her will. (Docket no. 11, ex. 1; Docket no. 15, ex. A at 24). One police officer testified that he saw Plaintiff's hand on Thomas' arm but did not see Thomas struggle or pull away from Plaintiff, and he merely speculated that Thomas was being physically held against her will. (Docket no. 15, ex. A at 26). Plaintiff testified that he grabbed Thomas' hand and walked toward the front door of the house, but he did not threaten Thomas in any way. (Docket no. 17, ex. B at 35-36).

The police wanted to talk to Thomas to make sure she was safe, so Plaintiff went into the house, locked the door, and went to an upstairs bedroom while Thomas stayed outside. (Docket no. 11, ex 2 at 19-20; Docket no. 17, ex. B at 36). Plaintiff maintains that he went into the house simply because the police wanted to talk to Thomas, not to him. According to Defendants' version, Plaintiff locked the porch door when he saw the police, then barricaded himself inside the house.

When Redford officers were finally able to isolate Thomas, they found her to be very uncooperative. Thomas refused to tell the police whether there were weapons or other people inside the house. (Docket no. 17, ex. B at 27-28). Defendants claim they ordered Plaintiff several times to open the front door but he refused, so they forced entry into the home. (Docket no. 11, ex. 1; Docket no. 17, ex. B at 28).

Defendants assert that when the officers kicked in the front door of the house Plaintiff fled out the back door. (Docket no. 11, ex. 1). Defendant Riley was stationed at the back of the house. Plaintiff exited the rear of the house with his hands in his pockets and ignored Defendant Riley's commands to remove his hands from his pockets and lay on the ground. (Docket no. 11, ex. 3). Plaintiff shouted profanities at Defendant Riley, quickly pulled his hands out of his pockets, and took a step to flee. (Docket no. 11, ex. 3). Defendant Riley deployed his taser one time and Plaintiff fell face first to the ground. Plaintiff sustained a minor cut to his lower lip and he refused medical treatment. (Docket no. 11, ex. 3).

Plaintiff's version of the facts is different. Plaintiff testified that he had no further conversations with the police after he went into the house and locked the door until after they started kicking in the door to the house. (Docket no. 11, ex. 2 at 20). When the police began forcing entry into the home, Plaintiff came to the window and told them that they did not need to kick in the door because he would come outside. (Docket on. 11, ex. 2 at 20-21). The front door of the house was jammed from being kicked, so Plaintiff told the officer at the front door that he was coming out the back door. (Docket no. 11, ex. 2 at 21). Plaintiff exited the house through the back door with his hands in the air and with no shirt on, showing that he was unarmed. (Docket no. 11, ex. 2 at 21, 28).

Defendant Riley was stationed at the back door and ordered Plaintiff to get on the ground. Before Plaintiff could comply with the order Defendant Riley shot him with a taser. (Docket no. 11, ex. 2 at 23). Between five and fifteen seconds later, Plaintiff was tasered a second time. (Docket no. 11, ex. 2 at 28). He claims that he stood looking at Defendant Riley after he was tasered because he thought he had been shot with a gun. Plaintiff remained standing until after he was tasered a third time. (Docket no. 11, ex. 2 at 28-29). He fell to the ground and blacked out after the third taser and

4

was transported to the police station. He believes he may have asked Redford officers to take him to the hospital. (Docket no. 11, ex. 2 at 30). Plaintiff claims that he suffered serious injury as a result of falling forward onto the concrete and now has constant pain in his neck and back.

Plaintiff was charged with domestic assault and battery, and resisting and obstructing a police officer. (Docket no. 11, ex. 2 at 35 and ex. 3). He was bound over for trial and acquitted of all charges. The present complaint relative to this motion asserts claims of excessive force; false arrest, false imprisonment, and malicious prosecution; assault and battery; intentional infliction of emotional distress; and gross negligence against Defendant Riley, and a claim of municipal liability against Defendant Redford Township.

**B.      Standard**

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.      Analysis**

*1.      Video Tape Evidence*

5

As a preliminary matter, Plaintiff argues that he is entitled to a negative inference against Defendants because they failed to produce the videotape of the incident despite repeated demands from Plaintiff's counsel. Plaintiff asserts that because Defendants maintain that they produced everything they have in their possession, but did not produce the videotape, Defendants must have destroyed the videotape evidence and Plaintiff is now entitled to an adverse inference that the videotape would have been favorable to him.

Plaintiff did not file a motion to compel discovery or a motion for sanctions for spoliation. Plaintiff has also failed to show that he requested a copy of the videotape in a proper discovery request. Moreover, Defendants have produced affidavits stating that there are no in-car recordings in existence relating to the arrest of Plaintiff. (Docket no. 17, ex. D, E). Therefore, not only is this issue not properly before the Court, but there is no evidence to suggest that Defendants destroyed evidence in this case.

*2. Defendant Riley*

　　*a. False Arrest and False Imprisonment*

Plaintiff argues that his arrest was unlawful and in violation of the Fourth Amendment because Defendants did not have probable cause to arrest him for domestic assault and battery or for resisting and obstructing a police officer. In keeping with the Fourth Amendment, a law enforcement officer is authorized to make a warrantless arrest if there is probable cause to believe that the suspect has committed or is committing a crime. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). In determining whether probable cause existed at the time of the arrest, the court should ask whether Defendants had probable cause to arrest the suspect for any offense. *Van Heck v. Cnty. of Macomb*, No. 08-13886, 2010 WL 5525364, at *5 (E.D. Mich. Aug. 9, 2010).

"Section 1983 claims predicated on false arrest, false imprisonment, or malicious prosecution fail if probable cause for an arrest is established." *Hansel v. Bisard*, 30 F.Supp.2d 981, 985-86 (E.D. Mich. 1998) (citations omitted). If there is more than one reasonable interpretation of the facts, the question of whether probable cause existed must be presented to the jury. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citation omitted).

Plaintiff was arrested and charged with resisting and obstructing in violation of Mich. Comp. Laws § 750.81d. (Docket no. 11, ex. 2 at 35). Mich. Comp. Laws § 750.81d(1) provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a [police officer] who the individual knows or has reason to know is performing his or her duties is guilty of a felony...." Mich. Comp. Laws §§ 750.81d(1); (7)(b)(i). " 'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7)(a). The statute is violated if a person physically resists a command, whether lawful or unlawful, or refuses to comply with a lawful command without using force. *Van Heck v. Cnty. of Macomb*, No. 08-13886, 2010 WL 5525364, at *5 (E.D. Mich. Aug. 9, 2010) (citing *Brooks v. Rothe*, 577 F.3d 701, 707 (6th Cir. 2009)).

Plaintiff was also charged with domestic assault and battery in violation of Mich. Comp. Laws § 750.81(2), which provides:

> (2) Except as provided in subsection (3) or (4), an individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

Mich. Comp. Laws 750.81(2).

As discussed in the recitation of facts, the parties submitted conflicting evidence concerning

7

whether Plaintiff refused to comply with lawful police orders. Evidence shows that Plaintiff barricaded himself inside the house and refused to comply with the officers' orders to come out of the house. Evidence further shows that Plaintiff ignored Defendant Riley's command to get to the ground, opting to attempt to flee instead. In contrast, the record contains evidence that Plaintiff voluntarily and peacefully came outside the house when he realized Defendants wanted to speak to him. There is also evidence to show that Plaintiff was attempting to comply with Defendant Riley's order when he was tasered. At the summary judgment stage, the Court is required to view the evidence in the light most favorable to Plaintiff and draw all inferences in Plaintiff's behalf. Accordingly, the Court finds that genuine issues of material fact exist as to whether Defendants had probable cause to arrest Plaintiff for resisting and obstructing.

Similarly, with regard to Plaintiff's arrest for domestic assault and battery, the record contains conflicting evidence as to whether Defendants could see into the enclosed porch and had reason to believe that Plaintiff was physically restraining or had otherwise assaulted and battered Thomas. The Court finds that whether or not there was probable cause for the arrest hinges on disputed circumstances surrounding the arrest.

If a jury believes Plaintiff's version of the facts, they could conclude that Defendants did not have probable cause to arrest Plaintiff for domestic assault and battery, or for resisting and obstructing. Accordingly, triable issues of fact remain on Plaintiff's false arrest and false imprisonment claim.

    *b.*    *Malicious Prosecution*

To prevail on a malicious prosecution claim "a plaintiff must show, at a minimum, that there was no probable cause to justify [his] arrest and prosecution." *Thacker v. City of Columbus*, 328

F.3d 244, 259 (6th Cir. 2003) (citation and internal quotation marks omitted). A police officer may be liable for malicious prosecution if he made, influenced, or participated in the decision to prosecute. *Sykes v. Anderson*, 625 F.3d 294, 311 (6th Cir. 2010). Despite the issues surrounding probable cause, Plaintiff does not allege facts or provide evidence to show that Defendant Riley made, influenced, or participated in the decision to prosecute Plaintiff. For that reason, any allegation based on malicious prosecution should be dismissed.

      *c.*      *Excessive Force*

Plaintiff argues that any use of a taser against him should be considered excessive force because he was in the process of surrendering, with his hands in the air, he was not being arrested for a violent crime, and he was not a threat to anyone. Plaintiff also argues that the tasering was excessive because Defendant Riley failed to warn Plaintiff before he deployed the taser, and because Defendant Riley was physically superior in size to the Plaintiff and should have waited for backup from officers on the scene.

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendant Riley was a person acting under color of state law. Thus, the only remaining issue under a § 1983 analysis is whether Defendant Riley deprived Plaintiff of a constitutional right.

The Fourth Amendment governs excessive force claims and requires the court to determine whether the amount of force used was objectively reasonable in light of the facts and circumstances confronting the officers' actions. *Graham v. Connor,* 490 U.S. 386, 395-96 (1989) ("the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight."). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations and internal quotation marks omitted). In determining the reasonableness of the force used, the court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ingram v. City of Columbus,* 185 F.3d 579, 596 (6th Cir. 1999) (citation omitted). The court should be guided by the principle that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. at 397.

Here, there is conflicting testimony as to whether Plaintiff committed assault and battery against Thomas, barricaded himself inside the house, and refused to comply with police commands. There are also factual disputes over whether Plaintiff had his hands in his pockets when he came out the back door of the house, and whether a reasonable officer on the scene could have believed that Plaintiff attempted to flee or presented an immediate threat to the safety of others. Finally, there is a dispute concerning the amount of force used and whether Defendant Riley deployed his taser one time or three times. Therefore, whether excessive force was used during the course of Plaintiff's arrest presents a question of fact for the jury.

    *d.*    *Qualified Immunity*

Defendant Riley asserts that he is entitled to the defense of qualified immunity. In determining whether a qualified immunity defense shields a defendant from individual civil liability,

10

the court should consider whether "taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution." *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (citation omitted). "If . . . a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* (citation and internal quotation marks omitted). *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (the court may exercise its discretion in deciding which of the two steps should be addressed first).

Here, too many questions of material fact remain unanswered for qualified immunity to be appropriate. The Court should deny Defendant Riley's request for qualified immunity.

  *e.*  *State Law Claims*

*Assault and Battery*

An assault under Michigan law is defined as an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 472 N.W. 2d 16, 21 (Mich. Ct. App. 1991). A battery is the "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id*. A police officer may use reasonable force to effectuate a lawful arrest, but may be held liable for assault and battery if the amount of force used is excessive. *See Young v. Barker*, 405 N.W.2d 395, 402 (Mich. Ct. App. 1987).

The Court should deny Defendants' Motion For Summary Judgment with respect to Plaintiff's state law assault and battery claim until such time as it resolves the issue of whether the amount of force used to effect Plaintiff's arrest was reasonable.

### *Intentional Infliction of Emotional Distress*

To establish a claim of intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (citations omitted). As previously indicated, Plaintiff claims that he exited the home with his hands up, without a shirt on to show that he was unarmed, and he was in the process of obeying Defendant Riley's command to get on the ground when he was tasered three times in quick succession. Plaintiff states that after he was tasered, Defendant Riley asked if Plaintiff "shit and piss[ed] on [himself]," leaving Plaintiff with the impression that Defendant Riley thought the incident was amusing. (Docket no. 11, ex. 2 at 29). Plaintiff further testified that he was so traumatized by the event that he attempted suicide. (Docket no. 11, ex. 2 at 31). In light of the unresolved factual issues left in this case, the Court recommends that Defendants' Motion For Summary Judgment be denied as to this claim.

### *False Arrest and Imprisonment*

Under Michigan law a claim of false arrest or imprisonment requires proof of an absence of probable cause. *Burns v. Olde Discount Corp.*, 538 N.W.2d 686, 688 (Mich. Ct. App. 1995). For the reasons already stated, Defendants' motion should be denied as to this claim.

### *Governmental Immunity*

Defendant Riley argues that he is entitled to governmental immunity on Plaintiff's claims of assault and battery, false arrest and imprisonment, and intentional infliction of emotional distress. To establish his entitlement to governmental immunity a defendant must show that (1) the acts were undertaken during the course of employment while the employee was acting, or reasonably believed that he was acting, within the scope of his authority, (2) the acts were undertaken in good faith or

in the absence of malice, and (3) the acts were discretionary as opposed to ministerial. *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008). "Whether a tortfeasor acted in good faith is a question of fact that is generally left to the jury." *Flones v. Dalman*, 502 N.W.2d 725, 728 (Mich. Ct. App. 1993).

If a jury believes Plaintiff's version of the facts, they could find that Defendant Riley acted in bad faith when he deployed his taser three times against a cooperative, shirtless, and unarmed Plaintiff as he stood with his hands raised in the air. The Court should find that Defendants have not demonstrated that Defendant Riley is entitled to dismissal of Plaintiff's state law claims of assault and battery, false arrest and imprisonment, and intentional infliction of emotional distress on the basis of governmental immunity.

### *Gross Negligence*

Plaintiff alleges that Defendant Riley breached his duty to competently perform his law enforcement duties by failing to properly investigate, providing false evidence, failing to provide exculpatory facts, and arresting and/or imprisoning Plaintiff without probable cause. (Docket no. 1). Michigan courts have consistently rejected "attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004). Plaintiff's gross negligence claim is premised on his claims of false arrest, false imprisonment, and malicious prosecution, and therefore should be dismissed. *See Odom v. Wayne Cnty.*, 760 N.W.2d at 228.

3.      *Defendant Redford Township*

Count II of the complaint asserts a § 1983 claim against Defendant Redford Township. To assert liability against Defendant Redford Township under 42 U.S.C. § 1983 Plaintiff must allege

and show that Redford Township caused the alleged constitutional violation through application of an unconstitutional policy, custom, or practice. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). Plaintiff must establish that the municipality's policy is either the moving force behind the constitutional violation, or the custom is "so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. at 691).

Plaintiff has not identified a written policy of Redford Township that caused the alleged constitutional violation. Instead, the parties argue that Plaintiff seeks to establish municipal liability through a failure to train claim. Plaintiff maintains that Redford Township is liable under a failure to train theory because Defendant Riley completed only four hours of taser training and that training occurred before Redford Township issued its official policy on the use of tasers. Plaintiff also argues that Defendant Riley was involved in a lawsuit in 2005 related to the improper use of a taser, and since that time Redford Township has not taken any steps to correct Defendant Riley's training.

Inadequate training may give rise to § 1983 liability only if "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To succeed on this claim, a plaintiff must establish that: (1) the training program is inadequate to the tasks of the municipal employee; (2) the inadequacy is the result of the municipality's deliberate indifference; and (3) the inadequacy caused the plaintiff's injury. *Berry v. City of Detroit*, 25 F.3d 1342, 1346 (6th Cir. 1994). It is not enough to establish that a particular officer was inadequately trained or that the conduct resulting in the injury could have been averted by more or better training. *City of Canton*, 489 U.S. at 390-91. When no formal policy exists, deliberate indifference can be established by showing that "the need

14

for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390.

Plaintiff has not provided sufficient evidence to raise a genuine issue of material fact in support of his failure to train claim. The record shows that Defendant Riley completed continuing education courses in criminal law, search and seizure, chemical weapons, and taser training. Even if the Court were to accept Plaintiff's assertion that Defendant Riley's taser training was deficient, the fact that one Redford police officer has been improperly trained and has been sued over his use of tasers two times does not provide proof of an obvious need for additional training or the deliberate indifference of the municipality in failing to correct the alleged deficiency.

Plaintiff cites to Defendant Riley's role as a defendant in the case of *Austin v. Redford Twp. Police Dep't*., No. 08-13236, 2011 WL 4583792 (E.D. Mich. Sept. 30, 2011), as if the mere fact that Defendant Riley was named in a lawsuit in 2005 and the plaintiff survived summary judgment motions means that Defendant Riley and Defendant Redford Township did something wrong. However, as Plaintiff is most certainly aware, the fact that Defendant Riley has been sued two times since Redford Township adopted its taser policy does not mean that he was improperly trained or that he engaged in any wrongdoing. Furthermore, the fact that the *Austin* plaintiff survived the summary judgment stage simply means that there were unresolved factual issues that prevented the Court from resolving the claims as a matter of law.

Plaintiff has not provided proof that the need for more or different training for Redford police officers is so obvious, and the allegedly improper training so likely to result in constitutional violations, that Defendant Redford Township was deliberately indifferent in failing to correct the

training deficiency. Accordingly, Defendant Redford Township is entitled to summary judgment on Plaintiff's failure to train claim.

**Conclusion**

For the reasons stated herein, the Court should dismiss Plaintiff's malicious prosecution and gross negligence claims against Defendant Riley. In addition, Defendant Redford Township is entitled to summary judgment on Plaintiff's failure to train claim. In all other respects, Defendants' Motion For Summary Judgment should be denied.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1,"

"Response to Objection #2," etc.

Dated: December 21, 2011  s/ Mona K. Majzoub
  MONA K. MAJZOUB
  UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: December 21, 2011  s/ Lisa C. Bartlett
  Case Manager

17